UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARQUISE DRUMWRIGHT,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SGT. C. HUCKLEBERRY, et al.,<br><br>　　　　Defendants. | Case No. 1:20-cv-00939-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S EIGHTH AMENDMENT CLAIMS AGAINST DEFENDANT GOMEZ FOR FAILURE TO PROTECT AND EXCESSIVE FORCE AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(ECF No. 14)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

　　　Marquise Drumwright ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.

　　　Plaintiff's Second Amended Complaint is now before this Court for screening. For the reasons that follow, the Court will recommend that this action proceed on Plaintiff's Eighth Amendment claims against defendant Gomez for failure to protect and excessive force. The Court will also recommend that all other claims and defendants be dismissed for failure to state a claim upon which relief may be granted.

1

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 7), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

\\\

## II. BACKGROUND

Plaintiff filed the complaint commencing this action on July 7, 2020. (ECF No. 1). On September 10, 2020, the Court screened the complaint, and found that Plaintiff's Eighth Amendment failure to protect claim against defendant Gomez should proceed past screening. (ECF No. 9). The Court also found that all of the other asserted claims in Plaintiff's complaint failed to state a claim upon which relief may be granted under the applicable legal standards and gave leave to amend the complaint. (Id.).

On October 5, 2020, Plaintiff filed a First Amended Complaint. (ECF No. 10). On October 21, 2020, the Court screened Plaintiff's First Amended Complaint. (ECF No. 11). In the First Amended Complaint, while Plaintiff alleged that he and an inmate told something to defendant Gomez, Plaintiff did not include allegations regarding what defendant Gomez was told, and the Court found that the First Amended Complaint failed to state any cognizable claims. (Id.). Because the Court was concerned that Plaintiff did not include sufficient allegations related to the failure to protect claim against defendant Gomez, the Court gave Plaintiff thirty days to state whether he wished to proceed on the original or amended complaint. (Id. at 14).

On December 9, 2020, Plaintiff filed a "Denial and Exception to the Return of the Screening Order to Show Cause for Relief in Support Thereof." (ECF No. 12). It was not clear what Plaintiff was seeking in this filing. However, Plaintiff did include additional relevant factual allegations that were not included in either complaint. Given this, the Court granted Plaintiff one final opportunity to amend his complaint. (ECF No. 13). Plaintiff filed his Second Amended Complaint on January 11, 2021. (ECF No. 14).

Plaintiff's Second Amended Complaint is now before this Court for screening.

## III. SUMMARY OF PLAINTIFF'S SECOND AMENDED COMPLAINT

At times, Plaintiff's complaint is difficult to understand. What follows is the Court's best understanding of Plaintiff's factual allegations.[1]

---

[1] Much of Plaintiff's complaint consists of Plaintiff repeatedly using words from legal standards.

3

On July 8, 2018, Plaintiff stated to defendant Gomez that he felt unsafe on Facility D-Yard. While Plaintiff spoke to defendant Gomez about this information, he was approached by an inmate who intervened in speaking to defendant Gomez. This inmate affirmed the factual claims, saying to defendant Gomez "what will happen to Plaintiff if Plaintiff stayed on the yard any longer due to problems that could result to violent behavior against Plaintiff."

Plaintiff was able to explain the situation and had mentioned the risks and repercussions to defendant Gomez. "G. Gomez doing was to say something about what had been told to him by one other inmate an Plaintiff, as in retaliation."

Both Plaintiff and the inmate were cuffed by escorting officers, and defendant Gomez stated something to the effect of "They won't take it home."

On the following day, during morning pill call, Plaintiff was attacked by three inmates, one of whom was the inmate that had spoken to defendant Gomez the day before. Plaintiff alleges that defendant Gomez caused the attack in retaliation for Plaintiff telling him how to alleviate the threat to Plaintiff's safety.

When escorting Plaintiff to the Facility D medical holding cells after the attack by inmates, defendant Gomez slammed Plaintiff on his face, causing the left side of Plaintiff's face to begin to bleed. Plaintiff was handcuffed when this occurred. Plaintiff never posed a threat, and there was no justification for this action. Plaintiff was left on the ground "beyond any standard of decency…."

Defendant Gomez had not been able to complete the escorting process. At this time defendant Gomez's superior, defendant sergeant Huckleberry, "exonerated Defendant Gomez of his custody control of Plaintiff, an the scene."

Plaintiff received eight stiches to his left eyebrow, along with scarring to the injured area.

Plaintiff alleges that defendant Gomez's use of force was retaliatory.

Defendant Huckleberry was the lead "Incident Commander." As lead Incident Commander, defendant Huckleberry was responsible for the supervision of subordinate personnel. Defendant Huckleberry instructed his personnel to handcuff the inmates involved

(including Plaintiff) and to escort them to holding cells. Defendant Huckleberry also observed defendant Gomez use force against Plaintiff.

As a related matter, defendant Huckleberry saw defendant Soto arrive to the location of the scene and instructed defendant Soto to complete the escort of Plaintiff to the Facility D medical holding cell.

### IV.   ANALYSIS OF PLAINTIFF'S SECOND AMENDED COMPLAINT

#### A.  Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others

which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### B. Failure to Protect in Violation of the Eighth Amendment

To establish a failure to protect claim, a prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "'Deliberate indifference' has both subjective and objective components." Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013). A prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Labatad, 714 F.3d at 1160 (quoting Farmer, 511 U.S. at 847).

Plaintiff alleges that on July 8, 2018, Plaintiff stated to defendant Gomez that he felt unsafe on Facility D-Yard. While Plaintiff spoke to defendant Gomez about this information, he was approached by an inmate who intervened in speaking to defendant Gomez. This inmate affirmed the factual claims, saying to defendant Gomez "what will happen to Plaintiff if Plaintiff stayed on the yard any longer due to problems that could result to violent behavior against Plaintiff." Defendant Gomez did not act to protect Plaintiff, and the next day Plaintiff was attacked by the inmate who approached him, as well as two others.

Liberally construing the allegations in Plaintiff's complaint, the Court finds that Plaintiff's failure to protect claim against defendant Gomez should proceed past screening.

The Court also finds that Plaintiff has failed to state a failure to protect claim against any other defendant. As to defendant Huckleberry, there are no factual allegations suggesting that he personally participated in the alleged deprivation(s), that he instituted a policy that caused the deprivation(s), that he knew of the alleged deprivation(s) but failed to prevent them, or that his failure to train or supervise his subordinates led to the alleged deprivation(s).

Plaintiff does allege that defendant Huckleberry ordered defendant Gomez to escort Plaintiff to a medical holding cell and witnessed defendant Gomez use force against him. However, there are no allegations suggesting that defendant Huckleberry knew there was a risk

that defendant Gomez would assault Plaintiff or that defendant Huckleberry had an opportunity to protect Plaintiff from the alleged assault.

Accordingly, Plaintiff has failed to state a failure to protect claim against defendant Huckleberry.

As to defendant Soto, his involvement in the failure to protect incident(s) is unclear. There are no allegations suggesting that defendant Soto knew Plaintiff was at risk of being attacked by inmates or by defendant Gomez, that defendant Soto was responsible for training or supervising defendant Gomez, or that defendant Soto was responsible for implementing a policy that led to the constitutional violation. Accordingly, Plaintiff has failed to state a failure to protect claim against defendant Soto.

### C. Excessive Force in Violation of the Eighth Amendment

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not … use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

When determining whether the force was excessive, the Court looks to the "extent of injury suffered by an inmate…, the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9.

In his Second Amended Complaint, Plaintiff only appears to be bringing an excessive force claim based on the force defendant Gomez allegedly used when escorting Plaintiff to a

8

medical holding cell.  According to Plaintiff, when defendant Gomez was escorting him, defendant Gomez slammed him on his face, causing the left side of his face to begin to bleed.  Plaintiff was handcuffed when this occurred.  Plaintiff never posed a threat, and there was no justification for this action.  Plaintiff was left on the ground "beyond any standard of decency…."

Liberally construing the allegations in Plaintiff's complaint, the Court finds that Plaintiff's excessive force claim against defendant Gomez should proceed past screening.

The Court also finds that Plaintiff has failed to state an excessive force claim against any other defendant.  Defendant Huckleberry's only involvement appears to be ordering defendant Gomez to escort Plaintiff, witnessing the alleged attack, and ordering defendant Soto to complete the escort.  Defendant Soto's only involvement appears to be taking over the escort after defendant Gomez allegedly attacked Plaintiff.  There are no factual allegations suggesting that either defendant Huckleberry or defendant Soto personally participated in the alleged attack, instituted a policy that led to the attack occurring, or knew that the attack was going to occur but failed to prevent it.  There are also no factual allegations suggesting that their failure to train or supervise their subordinates led to the alleged attack.

### D. Retaliation in Violation of the First Amendment

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Plaintiff appears to allege that defendant Gomez caused/allowed Plaintiff to be attacked by inmates and attacked Plaintiff in retaliation for Plaintiff telling defendant Gomez that he did not feel safe.  However, these are conclusory allegations.  Save for the closeness in time, there are no factual allegations suggesting that defendant Gomez allowed Plaintiff to be attacked or attacked Plaintiff because Plaintiff told defendant Gomez that he did not feel safe.  Thus, Plaintiff has failed to state a retaliation claim against defendant Gomez.

1    There are also no allegations suggesting that any other defendant took an adverse action
2 against Plaintiff because Plaintiff engaged in protected conduct.  Accordingly, Plaintiff has
3 failed to state a retaliation claim against any defendant.

### E. Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted).  Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).  Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid

10

claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

It is not clear if Plaintiff is attempting to assert a claim for deliberate indifference to his serious medical needs. To the extent that he is, Plaintiff has failed to state a claim because he has not sufficiently alleged that any defendant knew that he had a serious medical need and disregarded that need.

## V. CONCLUSION, RECOMMENDATIONS, AND ORDER

The Court has screened Plaintiff's Second Amended Complaint and finds that Plaintiff's Eighth Amendment claims against defendant Gomez for failure to protect and excessive force should proceed past screening. The Court also finds that all other claims and defendants should be dismissed.

The Court previously explained to Plaintiff the deficiencies in his complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff two opportunities to amend his complaint. As Plaintiff filed his Second Amended Complaint with the benefit of the information provided by the Court, it appears that further leave to amend would be futile.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's Eighth Amendment claims against defendant Gomez for failure to protect and excessive force; and
2. All other claims and defendants be dismissed for failure to state a claim upon which relief may be granted.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file

objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated: **January 19, 2021**           /s/ *Erica P. Grosjean*
                                      UNITED STATES MAGISTRATE JUDGE